IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SARAH HEATH,<br>*Plaintiff,*<br><br>*VS.*<br><br>THE STEWART ORGANIZATION, INC.,<br>*Defendant.* | Case No.: 3:21-CV-2777 |

## PLAINTIFF'S 1ST AMENDED COMPLAINT

**COMES NOW** Plaintiff Sarah Heath, by and through counsel, and respectfully brings this proceeding for damages against Defendant, The Stewart Organization, Inc. to redress the deprivation of rights secured to plaintiff by the Civil Rights Act of 19 42 U.S.C. § 2000(e) et seq., as amended in 1972, (hereinafter Title VII), and TEX. LAB. CODE §§ 21.051 and 21.106.

### I.   PARTIES

1. Plaintiff, SARAH HEATH, is an individual who resides in Prosper, Denton County, Texas.

2. Defendant, THE STEWART ORGANIZATION, INC. is a Delaware corporation with its principal place of business in the state of Alabama and, at all times relevant to this lawsuit, was doing business in the state of Texas and may be served with process by serving its registered agent: Cogency Global, Inc., 1601 Elm Street, Suite 4360, Dallas, Texas 75201-3136. Defendant is, and at all times hereinafter mentioned was, an employer engaged in interstate commerce and employing more than 15 persons. Defendant maintains its office within this District and Division at 2300 Gateway Drive, Irving, Texas 75063.

### II.   JURISDICTION AND VENUE

3. This action arises under the Title VII of the Civil Rights Act of 1964, as amended.

1

4.       Venue properly lies in this Court because Defendant The Stewart Organization, Inc. conducts business in the District and Division in which suit has been filed and all actions relevant to this action occurred in the District and Division in which suit has been filed.

### III.     ADMINISTRATIVE PROCEEDINGS

5.       On or about January 15, 2021, plaintiff filed a timely complaint, alleging sex discrimination, with the Equal Employment Opportunity Commission (hereinafter "EEOC"), and the Texas State Division of Human Rights (hereinafter "SDHR").

6.       On or about September 11, 2021, plaintiff received her right to sue letter from the Texas Workforce Commission. (A copy is annexed herewith as Exhibit A.)

### IV.     FACTS SUPPORTING PLAINTIFF'S CLAIMS

7.       On May 1, 2018, Ms. Heath began working with Defendant making $60,000 as a base salary, plus commissions and benefits.

8.       Ms. Heath was expected to gather business for Defendant selling printers and copier solutions to businesses in the Dallas/Fort Worth metroplex.

9.       In late January 2020, Ms. Heath discovered she was pregnant and informed her Manager, John Geeslin, of her pregnancy around mid-March.

10.      Disturbingly, Mr. Geeslin's immediate response was **"we've got to fill your pipeline up and increase your workload"**—indicating that she would need to work more than her non-pregnant counterparts to make up for any time spent out on maternity leave.

11.      On March 13, 2020, Ms. Heath and the rest of Defendant's employees were advised to work from home due to growing COVID-19 infections in the DFW area.

12.      On April 16, 2020, Ms. Heath received devastating news from her specialist obstetrician that her unborn daughter had a rare chromosomal abnormality which caused her brain and heart to not properly develop. Baby Heath's prognosis was fatal.

13. After discussing her options with her medical providers and family, Ms. Heath decided to induce labor and delivery, knowing that she would experience a still birth. The induction was scheduled for April 28, 2020.

14. After scheduling the date of her daughter's death, Ms. Heath immediately informed Mr. Geeslin about her upcoming procedure.

15. She advised Mr. Geeslin that she will be using her paid time off hours. And once her paid time off hours were exhausted, she planned on utilizing her FMLA leave while she recovers from the procedure and death of Baby Heath.

16. On April 27, 2020, the day before her induction, Ms. Heath worked a full day.

17. At the end of the workday, Ms. Heath reminded Mr. Geeslin that she was going to the hospital that evening and would be out of the office until she recovers.

18. The exact amount of time Ms. Heath would be out of the office was not discussed. However, under the Family and Medical Leave Act, she was entitled to 12 weeks of unpaid time off work.

19. On April 28, 2020, Ms. Heath gave birth to her stillborn daughter and started using her paid time off and FMLA leave.

20. Soon after, Ms. Heath and her husband cremated Baby Heath's remains.

21. On May 5, 2020, a week after delivering her stillborn daughter and a third of the way into her maternity leave, Mr. Geeslin texted Ms. Heath asking her when she was coming back to work.

22. During Ms. Heath's maternity leave, Mr. Geeslin asked when she was coming back to work multiple times—pressuring her to return to work.



*Text messages from Mr. Geeslin to Ms. Heath asking when she will be returning to work.*

23. On May 20, 2020, even though she had at least nine (9) weeks of FMLA leave remaining, Ms. Heath returned to work after being constantly pressured to return by Mr. Geeslin.

24. On May 28, 2020, Mr. Geeslin told Ms. Heath that her sales for May were low, and she was expected to pick up significantly in June by making at least $35,000 in sales. At that point, Ms. Heath had worked a grand total of eight (8) days in May.

25. Upon information and belief, Defendant did not give any other sales associates a $35,000 sales requirement for the month of June.

26. Since Ms. Heath began working with Defendant, Defendant has never given sale goals or quotas to their employees—emphasizing that they merely want their employees to do their best.

4

27. Around 9:00 am on June 30, 2020, Ms. Heath received an email from a prospective client with a signed order for over $45,000—$10,000 more than her June requirement. Thrilled to have met her benchmark, she immediately advised Mr. Geeslin and began processing the order.

28. About an hour and a half later, Mr. Geeslin called Ms. Heath to a meeting with him and his supervisor, Mike Braswell.

29. At this meeting, Mr. Geeslin and Mr. Braswell informed Ms. Heath that she was being terminated, and that her termination was very specifically due to low sales numbers in May. The gentlemen complained that Ms. Heath only had one sale in the month of May.

30. Neither mentioned her sales for the month of June. Neither acknowledged that she met the benchmark they set for her at the end of May. Neither acknowledged that Ms. Heath had a total of eight (8) workdays in the month of May. And, of course, neither acknowledged the reason that Ms. Heath only worked eight (8) days in the month of May.

31. Since 2019, Ms. Heath has had the following sales totals:

| Period | Total Sales |
|---|---:|
| January 2019 | $11,275.00 |
| February 2019 | $0.00 |
| March 2019 | $0.00 |
| April 2019 | $5,932.64 |
| May 2019 | $17,432.16 |
| June 2019 | $13,666.00 |
| July 2019 | $2,076.00 |
| August 2019 | $0.00 |
| September 2019 | $1,710.00 |
| October 2019 | $17,505.00 |
| November 2019 | $23,874.00 |
| December 2019 | $24,401.00 |
| January 2020 | $4,694.00 |
| February 2020 | $7,860.00 |
| March 2020 | $4,075.00 |
| April 2020 | $4,968.00 |
| May 2020 | $1,161.00 |
| June 2020 | $44,148.00 |

5

32. While Ms. Heath was terminated for not generating more sales during her eight workdays in May—after birthing and cremating Baby Heath—her male co-worker, Keith Hopkins, who similarly made $0 for the month of May, was not terminated. In fact, upon information and belief, Defendant did not so much as reprimand him.

33. Defendant terminated exactly one employee due to low sales numbers in the month of May—Sarah Heath. Defendant also had exactly one employee from this team on maternity leave in the month of May—Sarah Heath.

## V. STATEMENT OF CLAIMS

### CLAIM ONE:
### Pregnancy Discrimination under
### Title VII of the Civil Rights Act of 1964

34. Plaintiff incorporates the above paragraphs as if fully set forth herein.

35. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2(a).

36. As amended by the first clause of the Pregnancy Discrimination Amendments ("PDA"), Title VII defines the term "because of sex" as including, but not limited to, "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

37. The second clause of the PDA further provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefit programs, as other persons not so affected but similar in their ability or inability to work." *Id.*

38. Pregnancy and sex discrimination in employment are prohibited by the TCHRA, TEX. LAB. CODE §§ 21.051 and 21.106.

39. Plaintiff was pregnant and, as such, a member of protected class.

40. Plaintiff was qualified for her job and, prior to the incidents described herein, had not been reprimanded.

41. Plaintiff was inappropriately discharged and suffered an adverse employment action.

42. Plaintiff's discharge was directly related to her pregnancy, the loss of her child, and her resulting maternity leave, giving rise to an interference of discrimination.

43. Defendant's acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

44. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

## CLAIM TWO:
### Gender Discrimination under Title VII of the Civil Rights Act of 1964

45. Plaintiff incorporates the above paragraphs as if fully set forth herein.

46. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2(a).

47. Due to the Defendant's pattern, practice, and custom of behavior, Plaintiff was
    a. denied placement on the same terms as was offered to similarly situated men because of her sex;
    b. denied terms and conditions of employment commensurate with those offered to similarly situated men.

48. Each of these actions violated Title VII and TEX. LAB. CODE §§ 21.051 and 21.106.

49. Defendant's acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

50. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

## VI. REMEDIES

51. WHEREFORE, Plaintiff prays that the Court grant her the following relief:

   a. Award Plaintiff actual damages for loss of wages in an amount to be fixed upon inquest and based up on the difference between total compensation plaintiff would have earned in the absence of illegal discrimination against her, and the total compensation actually earned;

   b. Award Plaintiff compensatory and punitive damages;

   c. Award Plaintiff the cost of this action, together with reasonable attorneys' fees as provided in Title VII;

   d. Award Plaintiff damages for emotional distress and mental anguish;

   e. Prejudgment and post-judgment interest; and

   f. Such other relief as the Court shall deem just and proper.

## VII.   JURY TRIAL DEMAND

52. Plaintiff demands a trial by jury on all issues of facts and damages raised in this case.

Dated: January 26, 2022                              Respectfully submitted,

*/s/ Amy Carter*
Amy Carter
State Bar No. 24004580
Heather V. Davis
State Bar No. 24092324
Carter Law Group, P.C.
5473 Blair Rd.
Dallas, Texas
amy@clgtrial.com
hdavis@clgtrial.com
214.390.4173

**COUNSEL FOR PLAINTIFF
SARAH HEATH**

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2022, I electronically filed the foregoing using the Court's CM/ECF system, which sent notification to all counsel of record registered for electronic service.

*/s/ Heather Davis, Esq.*
Heather Davis, Esq.

9